UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

MARK LEE RIGGS, JR.,

       Plaintiff,

v.

COMMISSIONER OF SOCIAL
SECURITY,

       Defendant.
_____/

Case No. 1:15-cv-625

HON. ROBERT HOLMES BELL

# **O P I N I O N**

This is a social security action brought under 42 U.S.C. § 405(g) seeking judicial review of a final decision of the Commissioner of the Social Security Administration (Commissioner). Plaintiff Mark Riggs seeks review of the Commissioner's decision denying his claim for disability insurance benefits (DIB) and supplemental security income (SSI) under Titles II and XVI of the Social Security Act.

## **STANDARD OF REVIEW**

The Court's jurisdiction is confined to a review of the Commissioner's decision and of the record made in the administrative hearing process. *See Willbanks v. Sec'y of Health & Human Servs.*, 847 F.2d 301, 303 (6th Cir. 1998). The scope of judicial review in a social security case is limited to determining whether the Commissioner applied the proper legal standards in making her decision and whether there exists in the record substantial evidence

supporting that decision. *See Brainard v. Sec'y of Health & Human Servs.*, 889 F.2d 679, 681 (6th Cir. 1989). The Court may not conduct a *de novo* review of the case, resolve evidentiary conflicts, or decide questions of credibility. *See Garner v. Heckler*, 745 F.2d 383, 387 (6th Cir. 1984). It is the Commissioner who is charged with finding the facts relevant to an application for disability benefits, and her findings are conclusive provided they are supported by substantial evidence. *See* 42 U.S.C. § 405(g).

Substantial evidence is more than a scintilla, but less than a preponderance. *See Cohen v. Sec'y of Health & Human Servs.*, 964 F.2d 524, 528 (6th Cir. 1992) (citations omitted). It is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion. *See Richardson v. Perales*, 402 U.S. 389, 401 (1971); *Bogle v. Sullivan*, 998 F.2d 342, 347 (6th Cir. 1993). In determining the substantiality of the evidence, the Court must consider the evidence on the record as a whole and take into account whatever in the record fairly detracts from its weight. *See Richardson v. Sec'y of Health & Human Servs.*, 735 F.2d 962, 963 (6th Cir. 1984). The substantial evidence standard presupposes the existence of a zone within which the decision maker can properly rule either way, without judicial interference. *See Mullen v. Bowen*, 800 F.2d 535, 545 (6th Cir. 1986) (citation omitted). This standard affords to the administrative decision maker considerable latitude, and indicates that a decision supported by substantial evidence will not be reversed simply because the evidence would have supported a contrary decision. *See Bogle*, 998 F.2d at 347; *Mullen*, 800 F.2d at 545.

**PROCEDURAL POSTURE**

Plaintiff was 39 years of age on the date of the Administrative Law Judge's (ALJ) decision. (PageID.50, 76.) He obtained a GED, and was previously employed as a combination welder and heavy truck driver. (PageID.78, 105–06.) Plaintiff filed for benefits on August 3, 2012, alleging that he had been disabled since October 25, 2011, due to problems associated with his left hip, pelvis, left foot, back, blood pressure, and anxiety. (PageID.126, 138, 238–47.) Plaintiff's applications were denied on January 4, 2013, after which time he requested a hearing before an ALJ. (PageID.161–74.) On November 20, 2013, Plaintiff appeared with his counsel before ALJ Carol Guyton for an administrative hearing with testimony being offered by Plaintiff and a vocational expert (VE). (PageID.71–121.) In a written decision dated January 31, 2014, the ALJ determined that Plaintiff was not disabled. (PageID.50–70.) On April 16, 2015, the Appeals Council declined to review the ALJ's decision, making it the Commissioner's final decision in the matter. (PageID.29–33.) Plaintiff subsequently initiated this action under 42 U.S.C. § 405(g).

## ALJ'S DECISION

The social security regulations articulate a five-step sequential process for evaluating disability. *See* 20 C.F.R. §§ 404.1520(a-f), 416.920(a-f).[1] If the Commissioner can make a

---

[1] 1.  An individual who is working and engaging in substantial gainful activity will not be found to be "disabled" regardless of medical findings (20 C.F.R. § 404.1520(b));

2.  An individual who does not have a "severe impairment" will not be found "disabled" (20 C.F.R. § 404.1520(c));

3.  If an individual is not working and is suffering from a severe impairment which meets the duration requirement and which "meets or equals" a listed impairment in Appendix 1 of Subpart P of Regulations No. 4, a finding of "disabled" will be made

dispositive finding at any point in the review, no further finding is required. *See* 20 C.F.R. §§ 404.1520(a), 416.920(a). The regulations also provide that if a claimant suffers from a nonexertional impairment as well as an exertional impairment, both are considered in determining the claimant's residual functional capacity (RFC). *See* 20 C.F.R. §§ 404.1545, 416.945.

Plaintiff has the burden of proving the existence and severity of limitations caused by his impairments and that he is precluded from performing past relevant work through step four. *Jones v. Comm'r of Soc. Sec.*, 336 F.3d 469, 474 (6th Cir. 2003). At step five, it is the Commissioner's burden "to identify a significant number of jobs in the economy that accommodate the claimant's residual functional capacity (determined at step four) and vocational profile." *Id.*

ALJ Guyton determined Plaintiff's claim failed at the fifth step of the evaluation. At step one, the ALJ found that Plaintiff had not engaged in substantial gainful activity since his alleged onset date. (PageID.55.) At step two, the ALJ determined Plaintiff had the following severe impairments: (1) status post fracture of the left acetabular and ischium/degenerative joint disease of the left hip; (2) status post fracture of the left tibia and fibular; (3) hallux

---

without consideration of vocational factors (20 C.F.R. § 404.1520(d));

4. If an individual is capable of performing work he or she has done in the past, a finding of "not disabled" must be made (20 C.F.R. § 404.1520(e));

5. If an individual's impairment is so severe as to preclude the performance of past work, other factors including age, education, past work experience, and residual functional capacity must be considered to determine if other work can be performed. (20 C.F.R. § 404.1520(f)).

rigidus of the left great toe; (4) mild degenerative changes to the lumbar spine with stable small syrinx; (5) mild degenerative changes to the thoracic spine; and (6) affective and anxiety disorders. (PageID.55.) The ALJ also determined Plaintiff's high blood pressure was not a severe impairment. (PageID.55.) At the third step, the ALJ found that Plaintiff did not have an impairment or combination of impairments that met or equaled the requirements of the Listing of Impairments. (PageID.56–57.) At the fourth step, the ALJ found that Plaintiff retained the RFC based on all the impairments:

> to perform sedentary work as defined in 20 CFR 404.1567(a) and 416.967(a) with the following additional limitations. The claimant can occasionally push and pull with the left lower extremity. He can occasionally balance, stoop, kneel, and crouch. He can never climb ladders, ropes, or scaffolds. He can never crawl. He requires the option to stand at his work station every hour for a few minutes at one time. He is limited to simple, routine tasks involving no more than simple short instructions and simple work related decisions with few workplace changes. The claimant cannot have any contact with the public, but he can tolerate occasional contact with coworkers and supervisors.

(PageID.58.) Continuing with the fourth step, the ALJ determined that Plaintiff was unable to perform any of his past relevant work. (PageID.62.) At the fifth step, the ALJ questioned the VE to determine whether a significant number of jobs exist in the economy which Plaintiff could perform given his limitations. *See Richardson*, 735 F.2d at 964. The VE identified approximately 5,200 jobs within the lower peninsula of Michigan and 155,000 jobs within the nation, in the positions of production inspector, packager, and office helper that an individual similar to Plaintiff could perform. (PageID.62–63, 109–10.) This represents

a significant number of jobs. *See Hall v. Bowen*, 837 F.2d 272, 274 (6th Cir. 1988); *McCormick v. Sec'y of Health & Human Servs.*, 861 F.2d 998, 1000 (6th Cir. 1988).

Accordingly, the ALJ concluded that Plaintiff was not disabled at any point from October 25, 2011, through January 31, 2014. (PageID.63–64.)

## DISCUSSION

### 1.   Medical Opinions

Plaintiff argues the ALJ erred in a number of respects regarding the medical opinions in the record. He argues the ALJ failed to properly consider the opinion of Dr. Kathy Rosema, erred in giving more weight to the opinion of Dr. Edward Brophy over the opinions of other physicians, and that the ALJ improperly substituted her own judgment in determining Plaintiff's mental limitations. (PageID.705–07.) The Court finds no error requiring reversal.

#### *A.   Treating Physician Opinion*

There are three exhibits, numbered 22F through 24F and dated November 18, 2013, from Dr. Kathy Rosema. The first consists of a check-box worksheet asking the doctor's opinion on Plaintiff's physical condition. On it, Dr. Rosema opined that among other things, Plaintiff could occasionally lift and carry up to twenty pounds. (PageID.663.) He could sit for a total of six hours in an eight-hour day and stand and walk each for one hour in a day. (PageID.664.) But he could not walk for a block at a reasonable pace on rough or uneven surfaces. (PageID.668.) Plaintiff could occasionally use his hands for reaching, handling, fingering, feeling, pushing, and pulling, as well as using his right foot for operating

foot controls. He could never use his left foot for operating foot controls. (PageID.665.) Plaintiff further could never climb ramps, stairs, ladders, or scaffolds. While he could occasionally balance, he could never stoop, kneel, crouch, or crawl. (PageID.666.) The second exhibit contains a letter from Ms. Rosema to Plaintiff's counsel. After discussing Plaintiff's medical history, Dr. Rosema noted that in her opinion, Plaintiff "is totally and permanently disabled and unable to work in any job that would allow him to be gainfully employed." (PageID.670.) The last exhibit is similar to the first in that it consists of a worksheet containing short answer and check-boxes, only this worksheet asked for the doctor's opinions regarding Plaintiff's mental limitations. Dr. Rosema opined that while Plaintiff had no limitations regarding his ability to understand, remember, carry out, and make judgments on simple instructions and decisions, he was moderately limited when it came to complex instructions. (PageID.672.) Dr. Rosema also noted Plaintiff was moderately impaired regarding his ability to interact appropriately with the public, supervisors, and coworkers. (PageID.673.)

The ALJ gave only "little weight" to Dr. Rosema's opinion. She noted that Dr. Rosema's opinion that Plaintiff was disabled and unable to work was "conclusory, inconsistent with the substantial weight of the evidence, and is on a determination involving vocational factors with which Dr. Rosema is not qualified to touch on." (PageID.61.) Regarding Dr. Rosema's opinions on Plaintiff's physical condition, the ALJ noted "there is little evidence to support this claim, especially in regards to sitting in light of the only mild degenerative changes in the claimant's thoracic and lumbar spine, and the lack of

documented acute impairment to the left hip and left tibia and fibula." (PageID.61.) The ALJ went on to note that "[s]uch a statement appears to be sympathetic to the claimant, and gives undue deference to allegations such as the claimant's testimony that he spends twenty hours each day on the couch because of pain, fatigue, and weakness." (PageID.61.) The ALJ did not discuss Dr. Rosema's mental limitations. Plaintiff claims that in this, the ALJ failed to provide "good reasons" for giving the opinion less than controlling weight under the treating physician doctrine. The Court disagrees.

The treating physician doctrine recognizes that medical professionals who have a long history of caring for a claimant and his maladies generally possess significant insight into his medical condition. *See Barker v. Shalala*, 40 F.3d 789, 794 (6th Cir. 1994). An ALJ must, therefore, give controlling weight to the opinion of a treating source if: (1) the opinion is "well-supported by medically acceptable clinical and laboratory diagnostic techniques" and (2) the opinion "is not inconsistent with the other substantial evidence in the case record." *Gayheart v. Comm'r of Soc. Sec.*, 710 F.3d 365, 375-76 (6th Cir. 2013) (quoting 20 C.F.R. § 404.1527). It appears undisputed that Dr. Rosema qualifies as a treating physician.

Such deference is appropriate, however, only where the particular opinion "is based upon sufficient medical data." *Miller v. Sec'y of Health & Human Servs.*, 1991 WL 229979, at *2 (6th Cir. Nov. 7, 1991) (citing *Shavers v. Sec'y of Health & Human Servs.*, 839 F.2d 232, 235 n.1 (6th Cir. 1987)). The ALJ may reject the opinion of a treating physician where such is unsupported by the medical record, merely states a conclusion, or is contradicted by substantial medical evidence. *See Cohen*, 964 F.2d at 528; *Miller*, 1991 WL 229979, at *2

(*citing Shavers*, 839 F.2d at 235 n.1); *Cutlip v. Sec'y of Health & Human Servs.*, 25 F.3d 284, 286–87 (6th Cir. 1994).

If an ALJ accords less than controlling weight to a treating source's opinion, the ALJ must "give good reasons" for doing so. *Gayheart*, 710 F.3d at 376. Such reasons must be "supported by the evidence in the case record, and must be sufficiently specific to make clear to any subsequent reviewers the weight the adjudicator gave to the treating source's medical opinion and the reasons for that weight." *Id.* This requirement "ensures that the ALJ applies the treating physician rule and permits meaningful review of the ALJ's application of the rule." *Id.* (*quoting Wilson v. Comm'r of Soc. Sec.*, 378 F.3d 541, 544 (6th Cir. 2004)). Simply stating that the physician's opinions "are not well-supported by any objective findings and are inconsistent with other credible evidence" is, without more, too "ambiguous" to permit meaningful review of the ALJ's assessment. *Id.* at 376–77.

The Court finds no reversible error here. The ALJ properly discounted Dr. Rosema's opinion that Plaintiff was disabled and unable to work. The statement in question is not properly characterized as a medical opinion and, accordingly, the ALJ properly disregarded such.[2] *See, e.g*., *West v. Astrue*, No. 3:09-cv-370, 2011 WL 825791, at *8 (E.D. Tenn. Jan.

---

[2]A medical opinion is defined as "statements from physicians and psychologists or other acceptable medical sources that reflect judgments about the nature and severity of your impairment(s), including your symptoms, diagnosis and prognosis, what you can still do despite impairment(s), and your physical or mental restrictions." 20 C.F.R. §§ 404.1527(a)(2); 416.927(a)(2). While medical opinions offered by treating sources are generally accorded deference, statements that a claimant suffers from unspecified limitations or is disabled or unable to work are entitled to no deference because the determination of disability is a matter left to the Commissioner. *See* 20 C.F.R. § 404.1527(d)(1).

19, 2011) ("[I]t was reasonable for the ALJ to omit discussion of Dr. Coffey's opinion because it was not a 'medical opinion' as defined by 20 C.F.R. § 416.927(a)(2)."); *Koller v. Astrue*, No. 2:10-284, 2011 WL 5301569, at *5 (E.D. Ky. Nov. 3, 2011) (finding that the ALJ is not required to defer to statements by physicians concerning matters reserved to the Commissioner). Contrary to Plaintiff's assertion, the ALJ did not ignore this opinion. (PageID.733) Indeed the ALJ explicitly discussed it. (PageID.61.) Though the ALJ gave "little weight" to the opinion, such does not mean she ignored it.

The ALJ also provided good reasons, supported by substantial evidence, for discounting Dr. Rosema's opinion regarding Plaintiff's physical condition. As the ALJ noted, the doctor's opinion was inconsistent with the objective findings showing no acute disease on Plaintiff's back, legs, and hips. (PageID.423, 439–40, 605.) Given the lack of supporting evidence, it was not legal error for the ALJ to note that the doctor may have uncritically accepted Plaintiff's subjective complaints. *See Skipper-Leach v. Astrue*, No. 3:11-cv-325, 2013 WL 526536, at *9 (S.D. Ohio Feb. 11, 2013), *report and recommendation adopted sub nom. Skipper-Leach v. Colvin*, No. 3:11-cv-325, 2013 WL 781918 (S.D. Ohio Mar. 1, 2013).

Finally, the Commissioner contends that the ALJ was not required to give reasons regarding Dr. Rosema's opinion on Plaintiff's mental limitations because she essentially adopted the limitations. (PageID.723.) *See Wilson*, 378 F.3d at 547 (when "the Commissioner adopts the opinion of the treating source or makes findings consistent with the opinion, it may be irrelevant that the ALJ did not give weight to the treating physician's

opinion, and the failure to give reasons for not giving such weight is correspondingly irrelevant"). The Court agrees. As noted above, Dr. Rosema opined that Plaintiff would have no limitations in understanding, remembering, and carrying out simple instructions, as well as making judgments on simple work-related decisions. (PageID.672.) This is consistent with the RFC that limited Plaintiff to only simple instructions. (PageID.58.) Ms. Rosema also opined that Plaintiff was moderately limited in his ability to interact with the public, supervisors, and co-workers. Plaintiff has not shown how this is inconsistent with the RFC that limited Plaintiff from any contact with the public, and only occasional contact with co-workers and supervisors. (PageID.58.)

In arriving at her decision, the ALJ found that, unlike Dr. Rosema's opinion, Dr. Brophy, a state agency physician, offered an opinion that was supported by and consistent with the record as a whole. Under these circumstances, substantial evidence supports the ALJ's decision. *See* SSR 96–6p, 1996 WL 374180, at *3. (1996) ("In appropriate circumstances, opinions from State agency medical . . . consultants . . . may be entitled to greater weight than the opinions of treating or examining sources"); *Brooks v. Comm'r of Soc. Sec.*, 531 F. App'x 636, 642 (6th Cir. 2013); *Ogranaja v. Comm'r of Soc. Sec.*, 186 F. App'x 848, 851 (11th Cir. 2006) (upholding the ALJ's reliance on the opinions of non-examining state agency physicians which, unlike the opinion of the treating physician, were supported by and consistent with the record as a whole). Plaintiff raises no other objections regarding Dr. Rosema's opinion. Accordingly, this argument is rejected.

       **B.**  *Non-Treating Physicians*

In support of his contention that the ALJ improperly weighed the medical evidence, Plaintiff argues that the ALJ gave too much weight to the opinion of the non-examining State agency medical expert, Dr. Edward Brophy, D.O. (PageID.707.) On December 18, 2012, Dr. Brophy provided a physical RFC assessment, in which he opined that Plaintiff was limited to sedentary work. (PageID.132–33.) Plaintiff contends that the ALJ erred in considering this opinion, as it was not informed by later-submitted evidence regarding Plaintiff's impairments. (PageID.707.) Plaintiff has failed to demonstrate, however, that the opinion of Dr. Brophy was substantially undermined by anything in the additional records. Moreover, Plaintiff's argument fails to account for the fact that the ALJ discussed the entirety of the medical and testimonial evidence of record, and based her decision on all of the evidence, not simply Dr. Brophy's opinion. The ALJ noted the opinion was consistent with the "substantial weight of the evidence." To the extent the ALJ relied on this opinion, it was not in error. *See Carter v. Astrue*, 886 F. Supp. 2d 1093, 1112 (N.D. Iowa 2012) (ALJ did not err in assigning significant weight to the consultants' opinions, despite the fact they had not reviewed all the record evidence, "because those opinions were not the sole basis for [the] RFC determination and [the ALJ's] independent review of the evidence revealed that the assessments were further substantiated by subsequent treatment notes . . . and the record as a whole."). *See also Blakley v. Comm'r of Soc. Sec.*, 581 F.3d 399, 409 (6th Cir. 2009).

Plaintiff next challenges the fact that the ALJ afforded only "little weight" to the opinion of Dr. Stephen Montes, D.O. (PageID.707.) Dr. Montes is not a treating physician,

but rather, a consultative examiner.[3] As such, the ALJ was not "under any special obligation to defer to [his] opinion or to explain why he elected not to defer to it." *Karger v. Comm'r of Soc. Sec.*, 414 F. App'x 739, 744 (6th Cir. 2011). Nevertheless, the ALJ carefully considered Dr. Montes' opinion, and she explained her reasons for discounting it. (PageID.61.) Plaintiff appears to claim that the ALJ erred in rejecting the opinion solely for being similar to the opinion of Dr. Rosema. (PageID.707.) Plaintiff mischaracterizes the ALJ's action. In noting that the opinion was similar to Dr. Rosema's, the ALJ was merely noting that because the two opinions were similar, the same reasons for discounting Dr. Rosema's opinion applied to Dr. Montes' opinion. (PageID.61.) The Court has already found these reasons to be supported by substantial evidence. Accordingly the Court finds no error.

### C. Mental Limitations

Plaintiff next points out that the ALJ did not discuss the mental limitations offered by Dr. Rosema, as well as the opinion of Dr. Robert Newhouse, a state agency physician, who also offered an opinion on Plaintiff's mental limitations. Plaintiff also notes that the ALJ gave only limited weight to the opinion of Dr. Dennis Mulder. (PageID.705–07.) At bottom, Plaintiff argues that by failing to discuss the opinions, or by only giving the opinions little weight, the ALJ engaged in a practice commonly referred to as "playing doctor" when it came to assessing Plaintiff's mental limitations. (PageID.707.) The Court disagrees.

---

[3]Plaintiff's brief also mentions an opinion from Dr. Donald Sheill, another consultative examiner. (PageID.490–91, 705.) The Court notes Plaintiff raises no argument regarding this opinion.

As an initial matter, though the ALJ did not discuss Dr. Rosema's mental limitations, as noted above, the RFC is consistent with the doctor's opinion. Nor can Plaintiff show reversible error with regards to Dr. Newhouse's opinion. Dr. Newhouse opined that Plaintiff's anxiety was not severe. He also opined that Plaintiff had mild limitations in activities of daily living, maintaining social functioning, and in mainlining concentration, persistence, or pace. Dr. Newhouse also found that Plaintiff had not experienced repeated episodes of decompensation, each of extended duration. (PageID.142.) In this case, the ALJ found that Plaintiff was as limited, if not more so, than this opinion. (PageID.55–57.) Accordingly, Plaintiff can show no harmful error with respect to the ALJ's treatment of this opinion.

The ALJ also did not err in discounting Dr. Dennis Mulder's opinion. On November 14, 2013, Dr. Mulder examined Plaintiff for the first time at the request of Plaintiff's counsel. He concluded that Plaintiff was disabled because he met the requirements of Listing 12.04. (PageID.657.) Like Dr. Montes, Dr. Mulder is a consultative examiner, and the ALJ was not required to defer to the opinion. *Karger*, 414 F. App'x at 744. Moreover, Dr. Mulder's opinions that Plaintiff met the requirements of a listed impairment and was disabled were not entitled to any weight because those issues are reserved to the Commissioner. The ALJ determined that Dr. Mulder's opinion was entitled to little weight because the extreme functional restrictions that he suggested were not supported by the objective medical record or the claimant's daily activities. (PageID.61.) The ALJ is responsible for weighing conflicting medical opinions, not the Court. *Buxton v. Halter*, 246 F.3d 762, 775 (6th Cir.

2001); *accord White v. Comm'r of Soc. Sec.*, 572 F.3d 272, 284 (6th Cir. 2009). The ALJ's decision to give little weight to Dr. Mulder's opinions is well-supported and entirely consistent with applicable law.

It is well recognized that the ALJ is not permitted to "play doctor" and speculate as to how a particular impairment manifests (or should manifest) itself. Instead, the ALJ's task is to assess the evidence of record and identify Plaintiff's impairments and the limitations resulting from such. In this respect, the ALJ discussed the medical evidence in detail, including the evidence concerning Plaintiff's mental limitations. (PageID.60.) The ALJ's RFC determination is amply supported by the medical evidence and Plaintiff's reported activities, including the fact that he is able to take care of his son and maintain a household. (PageID.343–48.) "An ALJ does not improperly assume the role of a medical expert by weighing the medical and non-medical evidence before rendering an RFC finding." *Coldiron v. Comm'r of Soc. Sec.*, 391 F. App'x 435, 439 (6th Cir. 2010). For all the above reasons, Plaintiff's claim of error is denied.

### B. Sentence Six Remand

As part of his request to obtain review of the ALJ's decision, Plaintiff submitted to the Appeals Council additional evidence which was not presented to the ALJ. (PageID.35–47). Specifically, Plaintiff seeks to introduce several treatment notes dated after the ALJ's decision from Orthopaedic Associates of Muskegon. The Appeals Council received the evidence and considered it before declining to review the ALJ's determination. (PageID.30.) This Court, however, is precluded from considering such material. In *Cline v.*

*Commissioner of Social Security*, 96 F.3d 146 (6th Cir. 1996), the Sixth Circuit indicated that where the Appeals Council considers new evidence that was not before the ALJ, but nonetheless declines to review the ALJ's determination, the district court cannot consider such evidence when adjudicating the claimant's appeal of the ALJ's determination. *Id.* at 148; *see also Bass v. McMahon*, 499 F.3d 506, 512–13 (6th Cir. 2007) (quoting *Cline*, 96 F.3d at 148).

If Plaintiff can demonstrate, however, that this evidence is new and material, and that good cause existed for not presenting it in the prior proceeding, the Court can remand the case for further proceedings during which this new evidence can be considered. *Cline*, 96 F.3d at 148. To satisfy the materiality requirement, Plaintiff must show that there exists a reasonable probability that the Commissioner would have reached a different result if presented with the new evidence. *Sizemore v. Sec'y of Health & Human Servs.*, 865 F.2d 709, 711 (6th Cir. 1988). Plaintiff bears the burden of making these showings. *See Hollon ex rel. Hollon v. Comm'r of Soc. Sec.*, 447 F.3d 477, 483 (6th Cir. 2006). It appears Plaintiff argues that the new evidence, if considered, would have led the ALJ to arrive at a different conclusion regarding Plaintiff's credibility.[4]

---

[4] It also appears Plaintiff argues the ALJ's decision improperly discounted Plaintiff's credibility based on a "sit and squirm test." (PageID.708.) The argument is waived because it was not included in Plaintiff's statement of errors. *See Nichols v. Comm'r of Soc. Sec.*, No. 1:12-cv-995, 2014 WL 4259445, at * 9 (W.D. Mich. Aug. 28, 2014) (collecting cases). In addition, the argument is waived because it was raised in a perfunctory manner. *Clemente v. Vaslo*, 679 F.3d 482, 497 (6th Cir. 2012); *see Moore v. Comm'r of Soc. Sec.*, 573 F. App'x 540, 543 (6th Cir. 2014); *Curler v. Comm'r of Soc. Sec.*, 561 F. App'x 464, 475 (6th Cir. 2014); *see also McPherson v. Kelsey*, 125 F.3d 989, 995–96 (6th Cir. 1997).

While Plaintiff has requested that the Court remand this matter for consideration of the evidence in question, he has failed to demonstrate that consideration of the evidence in question would have led to a different result. Indeed, the Plaintiff's characterization of the evidence weighs against the claim. Plaintiff states that the evidence "indicates that Plaintiff's problems were continuing" and that his "conditions had not changed since the hearing." (PageID.707–08.) On an August 27, 2014 treatment note, Dr. Jeffrey Anhalt found Plaintiff had a left foot muscle contracture with a cavovarus foot and recommended surgery. (PageID.35.) As the Commissioner points out, this is similar to his March 15, 2011 opinion which was in front of the ALJ. (PageID.557.) An MRI on Plaintiff's spine after the hearing found only "very mild spondylosis" and a syrinx that was consistent to an earlier MRI discussed by the ALJ. (PageID.41, 58.) Further testing found only mild degenerative changes or unremarkable results. (PageID.43–44, 45.) While such evidence shows that Plaintiff continues to have medical conditions, arguing that the evidence only substantiates earlier evidence does not satisfy Plaintiff's burden of demonstrating a reasonable probability that the Commissioner would have reached a different result. Accordingly, the Court cannot consider this evidence and there exists no basis for remanding the matter for consideration of such. Plaintiff's claim of error is denied.

## CONCLUSION

For the reasons articulated herein, the Commissioner's decision will be **AFFIRMED.** A separate judgment shall issue.

Dated: June 23, 2016                         /s/ Robert Holmes Bell
                                             ROBERT HOLMES BELL
                                             UNITED STATES DISTRICT JUDGE